IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ORLANDO CLARK | CRIMINAL INFORMATION<br>1:22-cr-426 |

**THE UNITED STATES ATTORNEY CHARGES THAT:**

1. From in or about 2011 through in or about 2013, the Defendant, Orlando Clark, was employed by U.S. Company 1, which helped manage the U.S. government's award of contracts in furtherance of the U.S. reconstruction mission in Afghanistan. Defendant Clark was a Construction Manager with U.S. Company 1, in which capacity he interacted with representatives of Afghan companies that were contracting with the U.S. government. As a manager of projects in furtherance of the U.S. reconstruction mission, Defendant Clark acted on behalf of the United States.

2. While Defendant Clark was deployed to Afghanistan between in or about 2011 and in or about 2012, he met Todd Coleman, a U.S. citizen who had deployed to Afghanistan as an Acquisition Analyst with U.S. Company 2. Coleman's role involved evaluating bid information, recommending contract awards, and processing invoices for payments to contractors.

3. Coconspirator 1 (CC-1) was the owner and Chief Executive Officer of Afghan Company 1, which was awarded multiple contracts from the U.S. Army through which it obtained millions of dollars in U.S. funds in or around 2012. The contracts involved, among other things, the construction of an Afghan police station and a security checkpoint for U.S. Armed Forces.

4. Section 602(b) of the Afghan Allies Protection Act of 2009, as amended, authorized the issuance of Special Immigrant Visas (SIVs) to Afghan nationals who worked with the U.S. Armed Forces in Afghanistan as interpreters or translators. Among other requirements, an Afghan national applying for a SIV under this program was required to submit a letter of recommendation from a person who was associated with the U.S. government in a specified supervisory or senior position.

5. The U.S. Department of State, National Visa Center, was located in Portsmouth, New Hampshire, and was responsible for reviewing applications for SIVs. As part of its procedures for processing applications, it was the practice of the Department of State to request verification from the recommender.

## COUNT 1
### CONSPIRACY TO BRIBE A PUBLIC OFFICIAL

6. Paragraphs 1 through 3 of this Information are realleged and incorporated by reference as though fully set forth herein.

7. From in or about 2011 through in or about 2013, in the Northern District of Georgia and elsewhere, the Defendant,

    ORLANDO CLARK,

    did knowingly and willfully, that is, with the intent to advance the conspiracy, combine, conspire, and agree with Coleman and CC-1 to commit an offense against the United States, namely, bribery of a public official, that is, in return for Clark, a public official, being influenced to commit and aid in committing, colluding in, and allowing, a fraud, and making opportunity for the commission of a fraud, on the United States, Clark did corruptly demand, seek, receive, accept, and agree to receive and accept, a thing of value, namely monetary payments, in violation of Title 18, United States Code, Section 201(b)(2)(B).

### PURPOSE OF THE CONSPIRACY

8. It was a purpose of the conspiracy for Defendant Clark to (a) enrich himself, Coleman, and CC-1 in exchange for corruptly manipulating the

procurement of U.S. government contracts to increase the value of the contracts and to facilitate bribes; and (b) conceal the conspiracy.

**MANNER AND MEANS**

9. In furtherance of the conspiracy, and to accomplish its object, Defendant Clark, Coleman, and CC-1 employed the following manner and means, among others:

10. Defendant Clark received emails from Coleman containing confidential information about the procurement process, which Defendant Clark forwarded by email to CC-1 to maximize the amount of money that Afghan Company 1 obtained in U.S. government contracts and the amount of bribe money that Defendant Clark and Coleman obtained from CC-1.

11. In some instances, Defendant Clark and Coleman secretly supplied Afghan Company 1 and CC-1 with confidential information about bids submitted by competitors to manipulate the bidding process fraudulently and corruptly by giving CC-1 and Afghan Company 1 an unfair advantage over their competitors, ensuring that CC-1 and Afghan Company 1 could inflate their bids and still receive those contracts.

12. At other times, CC-1 submitted bids from Afghan Company 1 and other companies that CC-1 owned or controlled to create the illusion of a

competitive bidding process. In those instances, Defendant Clark and Coleman instructed CC-1 on how to price the bids that CC-1 submitted on behalf of Afghan Company 1 and other companies that CC-1 owned or controlled.

13. Between in or about August 2012 and in or about September 2012, to conceal the bribe payments, Defendant Clark and Coleman registered fictitious limited liability companies (LLCs) with the Georgia Secretary of State, opened bank accounts in the names of those fictitious LLCs, deposited bribe payment proceeds into those accounts; and created false and fraudulent invoices and records to make it appear that they were involved in a car-exporting business in the United Arab Emirates.

14. Between in or about September 2012 and in or about April 2013, Defendant Clark and CC-1 sent approximately 22 wire transfers totaling approximately $255,000 in bribe payments through the fictitious LLCs. To conceal the fraudulent nature of the wire transfers, Defendant Clark and CC-1 provided false and intentionally misleading information to banks concerning the purpose of the wires.

15. Defendant Clark and Coleman also received cash bribes in furtherance of the scheme, some of which CC-1 paid to Defendant Clark and Coleman

when they traveled to the United Arab Emirates. Defendant Clark and Coleman smuggled these funds back into the United States without declaring the currency to the United States.

16. Defendant Clark and Coleman received approximately $400,000 in total bribe payments from CC-1. In exchange, they steered approximately 10-12 U.S. government contracts to Afghan Company 1.

17. Defendant Clark and Coleman used the bribes payments that they received to pay their personal expenses. For example, Defendant Clark used bribe money to purchase two BMWs for his personal use.

## OVERT ACTS

18. In furtherance of the conspiracy and to accomplish its object, Defendant Clark, Coleman, and CC-1 committed the following overt acts, among others, in the Northern District of Georgia and elsewhere:

19. In or around March 2012, Defendant Clark and CC-1 negotiated a bribe payment that CC-1 and Afghan Company 1 paid to Defendant Clark and Coleman. CC-1 and Afghan Company 1 paid the bribe to Defendant Clark and Coleman in return for their assistance in manipulating the bidding process for a contract, and for their assistance in facilitating the award of such contract to Afghan Company 1.

20. In connection with the same bidding process, Afghan Company 1 originally submitted a bid of approximately $530,000. Knowing that CC-1 had agreed to pay a kickback of approximately 10 percent of the contract award to Defendant Clark and Coleman, Defendant Clark and Coleman agreed to have Afghan Company 1 and CC-1 increase the bid for at least two reasons: to allow Afghan Company 1 to obtain more money from the United States than if Afghan Company 1 had received the contract at its original $530,000 bid; and to allow Defendant Clark and CC-1 to obtain larger bribe payments.

21. On or about March 20, 2012, to fraudulently and corruptly manipulate the bidding process to allow Afghan Company 1 to obtain an inflated contract, Coleman directed Defendant Clark to send CC-1 instructions to adjust Afghan Company 1's bid and the bids of other companies that CC-1 owned and controlled. Defendant Clark sent this information to CC-1, allowing Afghan Company 1 to submit a bid higher than its original $530,000 bid, but low enough to steer the award to Afghan Company 1.

22. On or about March 23, 2012, Coleman emailed the awarded contract for $620,570 to CC-1 and Afghan Company 1, which reflected an increase of

approximately $90,000 over the initial bid amount of approximately $530,000.

23. On or about September 17, 2012, for the purpose of receiving things of value from CC-1 in exchange for their collusion and fraud on the United States, Defendant Clark and CC-1 caused a $90,000 wire transfer to be sent from Afghan Bank 1 in Kabul, Afghanistan, to U.S. Bank 1 in Atlanta, Georgia, which was fraudulently represented to be a "Payment for Vehicles" but was, in fact, a bribe.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### CONSPIRACY TO COMMIT VISA FRAUD

24. Paragraphs 1 through 5 of this Information are realleged and incorporated by reference as though fully set forth herein.

25. From in or about 2015 through in or about 2020, in the Northern District of Georgia and elsewhere, the Defendant,

ORLANDO CLARK,

did knowingly and willfully, that is, with intent to advance the conspiracy, combine, conspire, and agree with others to commit an offense against the United States, namely, visa fraud, that is, to present a document required

by the immigration laws and regulations that contained a false statement with respect to a material fact, in violation of Title 18, United States Code, Section 1546(a).

**MANNER AND MEANS**

26. In furtherance of the conspiracy, and to accomplish its object, Defendant Clark and others employed the following manner and means, among others:

27. Between in or about 2015 and in or about 2019, and in exchange for bribe payments, Defendant Clark signed at least 12 letters of recommendation in support of SIV applications for Afghan nationals whom Defendant Clark falsely claimed to have supervised while deployed to Afghanistan.

28. After the applications were submitted, in response to inquiries from the Department of State, Defendant Clark falsely verified the authenticity of the letters. Defendant Clark's materially false letters were presented to the Department of State and had the capacity to influence its decision-making in processing the applications for SIVs.

29. In exchange for signing and falsely verifying the recommendation letters for SIV applicants, Defendant Clark arranged to receive approximately

$1,500 in bribe payments for each letter of recommendation, all of which occurred while he was located within the Northern District of Georgia.

### OVERT ACTS

30. In furtherance of the conspiracy and to accomplish its object, Defendant Clark committed the following overt acts, among others, in the Northern District of Georgia and elsewhere:

31. On or about September 4, 2015, with respect to the first of the 12 SIV applicants for whom Defendant Clark wrote a false letter of recommendation, Defendant Clark, who at the time was residing in the Northern District of Georgia, received an email from the applicant indicating that the Afghan applicant would pay a "gift" if Defendant Clark signed a letter of recommendation.

32. Approximately one month later, the applicant sent an email to Defendant Clark indicating that the Department of State was asking for the applicant's supervisor (which Clark was not) to opine on whether the applicant posed a "threat to the national security and safety" of the United States. The Afghan applicant also told Defendant Clark that he would pay Defendant Clark a "gift" once he received the SIV.

33. Over four years later (on or about February 6, 2020), the Department of State emailed Defendant Clark, asking him to verify the letter that falsely stated that he had supervised the applicant. Defendant Clark, who was still residing in the Northern District of Georgia, stated, "Yes, I confirm."

All in violation of Title 18, United States Code, Section 371.

RYAN K. BUCHANAN
  *United States Attorney*

*John Russell Phillips*

JOHN RUSSELL PHILLIPS
  *Assistant United States Attorney*
Georgia Bar No. 576335

*MKahn*

MATT KAHN
  *Trial Attorney, Fraud Section*
  *U.S. Department of Justice*
Florida Bar No. 72032

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404) 581-6000